**JASON R. MUCHA**,
c/o Rettko Law Offices, S.C.
15460 W. Capitol Drive, Ste. 150
Brookfield, WI 53005

    Plaintiff,

    v.                                           Case No. 14-CV-303

**CITY OF MILWAUKEE,**
200 East Wells Street
Milwaukee, WI 53202,
**CITY OF MILWAUKEE EMPLOYES'
RETIREMENT SYSTEM,**
789 N. Water Street, Ste. 300
Milwaukee, WI 53202,
**BERNARD ALLEN, EXECUTIVE DIRECTOR**
Individually and in his official capacity
789 N. Water Street, Ste. 300
Milwaukee, WI 53202,
**LIEUTENANT JUTIKI JACKSON,**
Individually and in his official capacity
749 West State Street
Milwaukee, WI 53233,
**CAPTAIN DONALD GAGLIONE**,
Individually and in his official capacity
749 West State Street
Milwaukee, WI 53233,

    Defendants.

## COMPLAINT

The Plaintiff, Jason R. Mucha, by his attorney, William R. Rettko, hereby states and alleges to the Court as follows:

### NATURE OF THE ACTION

This case arises out of an unlawful seizure and detention of Jason R. Mucha ("Mucha"), an adult citizen of the State of Wisconsin who was seized, taken from his home and detained depriving him of his liberty and privacy without substantive or procedural due process of law in

violation of his rights guaranteed to him by Wisconsin state law and by the Fourth, Fifth and/or Fourteenth Amendments pursuant to 42 U.S.C. § 1983. In addition, Mucha brings a state law false imprisonment action against the defendants as they initiated, requested, directed and carried out the detention of Mucha without legal justification, a state law abuse of process claim for initiating an involuntary commitment proceeding against Mucha for the purpose of punishing and discrediting Mucha to gain a position to deny his duty disability benefit application process, together with a § 51.30, Wis. Stats., violation against the defendant, City of Milwaukee Employes' Retirement System for disclosing medical records to the City of Milwaukee Police Department without Mucha's prior consent or court order permitting such disclosure.

## JURISDICTION AND VENUE

1. Jurisdiction of this court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 for those claims seeking redress under the laws and statutes of the United States for the deprivation of rights secured by the constitution and the laws of the United States.

2. This Court also has subject matter jurisdiction for the state law claims under 28 U.S.C. § 1367.

3. Venue properly lies in the Eastern District of Wisconsin under 28 U.S.C. § 1391 as the events giving rise to this action occurred within this District.

## PARTIES

4. Plaintiff Jason R. Mucha resides within the State of Wisconsin, and was at all material times hereto a sergeant employed with the Milwaukee Police Department.

5. Defendant, City of Milwaukee, is a municipal corporation and a city of the first class, duly organized and existing under the Constitution and laws of the State of Wisconsin and maintains its offices at 200 East Wells Street, Milwaukee, WI 53202.

6. Defendant, City of Milwaukee Employes' Retirement System (hereinafter "ERS"), administers health insurance, retirement, disability and pension benefits for and on

behalf of the employees of the City through and under the authority of the Annuity and Pension Board which was created by defendant City to administer benefits provided by City as the employer of the plaintiff, and maintains its offices at 789 N. Water Street, Milwaukee, WI 53202.

7. Defendant, ERS Executive Director Bernard Allen (hereinafter "Allen"), at all times material to this action is and was the Executive Director for the ERS and is responsible for overseeing the proper disclosure of all records and the proper conducting of all processes, and is a party in both his individual and official capacities. In all respects set forth in this Complaint, Allen acted under color of law of the State of Wisconsin.

8. Defendant, Lieutenant Jutiki Jackson (hereinafter "Jackson"), at all times material to this action was a lieutenant of the Milwaukee Police Department (hereinafter "MPD"), and is a party in both his individual and official capacities. In all respects set forth in this Complaint, Jackson acted under color of law of the State of Wisconsin.

9. Defendant, Captain Donald Gaglione (hereinafter "Gaglione"), at all times material to this action was a captain of the MPD and is a party in both his individual and official capacities. In all respects set forth in this Complaint, Gaglione acted under color of law of the State of Wisconsin.

## STATEMENT OF CLAIMS

10. On Tuesday, November 20, 2012, Mucha was peacefully reposed in his home in Milwaukee County, Wisconsin.

11. Earlier that day, with Allen's direct knowledge and consent, a medical report mailed to the ERS on November 5, 2012 by Dr. Feinsilver who had completed an evaluation of Mucha on October 17, 2012 as a part of Mucha's duty disability benefits application was released to the MPD as there were statements provided in the October 17th evaluation from Mucha to Dr. Feinsilver that Mucha had thoughts of suicide by cop although not wishing to kill himself and

had thoughts of attending a command staff meeting with a rifle, and shooting them until they shot him, but further indicated he did not intend to do that.

12. At no time from October 17, 2012 through November 20, 2012 or anytime thereafter did Dr. Feinsilver contact any law enforcement authority believing Mucha was a danger to himself or any third person much less initiating an involuntary commitment proceeding for mental observation.

13. On November 20, 2012 after communications between the ERS and MPD, several officers assigned to the MPD Tactical Enforcement Unit were dispatched to Mucha's residence with Jackson and Gaglione appearing at Mucha's front door in full uniform, armed and displaying their badges of authority for the purpose of seeking Mucha's detention for an involuntary emergency mental observation.

14. According to a Statement of Emergency Detention by Law Enforcement Officer, Jackson and Gaglione, together with members of the MPD Tactical Enforcement Unit were dispatched to Mucha's residence to detain him on the alleged basis that on November 5, 2012 at 2:25 p.m., at the Office of Dr. Feinsilver, Mucha made several statements of suicidal thoughts as well as a statement of shooting members of the police department, and specifically stated he had thoughts of suicide by cop, and would go to a command staff meeting with a rifle shooting them until they shot him.

15. Jackson later indicated in a Statement of Emergency Detention by Law Enforcement Officer that Mucha had during a November 5, 2012 interview with Dr. Feinsilver, as a part of the duty disability application process, that he could not go back to work and could not take a chance of them trying to get him as that could have a real bad ending, and further stated he had the means to carry out the thought because he had many guns at his home.

16. Jackson also noted in his Statement of Emergency Detention by Law Enforcement Officer that Dr. Feinsilver had passed this information to the MPD, and Jackson upon going to

Mucha's home and speaking to him, noted that Mucha stated "the thoughts of suicide and hurting other people were only dreams, and that he does not have any intent on hurting himself or anyone else."

17. Nonetheless, Jackson and Gaglione involuntarily seized Mucha, handcuffed and conveyed him in a uniformed MPD vehicle to the Milwaukee County Mental Health Facility at 8:40 p.m. on November 20, 2012 where he was detained.

18. At the time of the seizure, transportation and detention of Mucha, neither Jackson or Gaglione had cause to believe that Mucha was mentally ill, had a substantial probability of physical harm to himself as manifested by evidence of recent threats or attempts of suicide or serious bodily harm or had a substantial probability of physical harm to other persons as manifested by evidence of recent homicidal or other violent behavior on his part or by evidence that others were placed in reasonable fear of violent behavior and serious physical harm to them as evidenced by a recent overt act, attempt or threat to do physical harm on his part, or had substantial probability of physical impairment or injury to himself due to impaired judgment as manifested by evidence of a recent act or omission.

19. Jackson and Gaglione did not act in good faith in completing the Statement of Emergency Detention by Law Enforcement Officer pursuant to § 50.15(11), Wis. Stats., because Dr. Feinsilver had not contacted the MPD regarding an interview conducted of Jason Mucha on November 5, 2012.

20. At no time on November 5, 2012 or thereafter up to and through November 20, 2012 had Mucha seen or been evaluated by Dr. Feinsilver.

21. Mucha was evaluated by Dr. Feinsilver on October 17, 2012, at which time he was given a psychiatric evaluation by Dr. Feinsilver for the purpose of determining whether he was eligible for duty disability benefits as a result of work-related stress from his work as a sergeant with the MPD that prevented him from reporting to duty since March 20, 2012.

22. On November 5, 2012, Dr. Feinsilver completed a report of his evaluation from the October 17, 2012 visit with Mucha and forwarded the same to the ERS which was received by the ERS on November 8, 2012, and was closed on November 12, 2012 with no action taken by the Annuity and Pension Board.

23. On November 20, 2012 at 4:55 p.m., the report completed by Dr. Feinsilver was forwarded to the MPD, but not at the direction of Dr. Feinsilver, with all parts of the report whited out except the statements used as a basis for detention.

24. Jackson and Gaglione did not act in good faith under § 51.15(11), Wis. Stats., as they were acting on a report from an evaluation that occurred 34 days earlier on October 17, 2012 without consultation with Dr. Feinsilver. As such, there were no recent events to act upon, there was no one in immediate danger, and their conduct was unconscionable under these circumstances which would have required further investigation as the Statement of Emergency Detention by Law Enforcement Officer completed by Jackson and Gaglione was fraudulent, deceitful, and at the least was a dishonest act of gross negligence.

25. Based upon the Statement of Emergency Detention by Law Enforcement Officer completed by Jackson and Gaglione, Mucha was admitted to the Milwaukee County Mental Health Facility on November 20, 2012, the Tuesday night before Thanksgiving, and was not released until the Friday after Thanksgiving, November 23, 2012, after finally being evaluated by a physician who determined there was no basis to detain Mucha for an involuntary mental observation.

### FIRST CAUSE OF ACTION
### UNLAWFUL SEIZURE UNDER THE FOURTH AND FOURTEENTH AMENDMENT – COLOR OF STATE LAW

26. Reallege and incorporate herein by reference paragraphs 1 through 25 of this Complaint as if set forth at length herein.

27. The actions of Defendants Jackson, Gaglione and the City of Milwaukee as alleged herein deprived Mucha of his right to be free from unreasonable detention in violation of the substantive and procedural due process rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution, the Constitution of the State of Wisconsin and in violation of 42 U.S.C. § 1983.

28. The actions of defendants Jackson and Gaglione who were acting under color of law as alleged herein deprived Mucha of his constitutional rights to be free from unreasonable detention and not to be deprived of his liberty and privacy without due process of law as guaranteed by the Fourth, Fifth and Fourteenth Amendments, as well as the laws of the State of Wisconsin so as to give rise to liability under 42 U.S.C. § 1983.

29. As the proximate result of said actions, Mucha has sustained compensatory damages including but not limited to embarrassment, humiliation, loss of reputation, and emotional distress, and monetary expenses for legal counsel.

30. Defendants Jackson and Gaglione while acting under color of law and through their actions, intentionally failed to comply with Mucha's right to be free from an involuntary detention without first establishing a "good faith" reasonable basis or other legal basis for such detention and having knowledge of the unlawfulness of these acts as they were contrary to the MPD's Standard Operating Procedures and well-established laws, committed intentional, willful and wanton acts in disregard of Mucha's constitutional rights making punitive damages against the defendants in their individual capacities necessary to stop these repeated patterns from occurring.

## SECOND CAUSE OF ACTION
## FALSE IMPRISONMENT – STATE LAW

31. Reallege and incorporate herein by reference paragraphs 1 through 30 of this Complaint as if set forth at length herein.

32. By the acts to retain and restrain Mucha's individual liberty, by handcuffing him and transporting him a uniformed MPD vehicle for detention at the Milwaukee County Mental Health Facility from November 20, 2012 through November 22, 2012, Jackson, Gaglione and the City imposed restraints upon Mucha's liberty without legal justification.

33. Said defendants did so deliberately and/or negligently without probable cause or a good faith reasonable basis as defined in § 51.15(11), Wis. Stats., to believe Mucha committed any crime or posed a danger to himself or others and without any other sufficient legal excuse.

34. The before-stated acts of defendants were beyond the scope of their employment, exceeded their authority or discretion and/or were committed wantonly or in a culpable or grossly negligent manner.

35. As a proximate result of said actions, Mucha has sustained mental anguish, loss of reputation, emotional distress and other expenses as a result of these unlawful acts complained of herein, and a result of the intentional acts, the City is responsible for punitive damages to prevent this from reoccurring.

### THIRD CAUSE OF ACTION
### ABUSE OF PROCESS

36. Reallege and incorporate herein by reference paragraphs 1 through 35 of this Complaint as if set forth at length herein.

37. The ERS thorough Allen released Dr. Feinsilver's report of November 5, 2012 via facsimile to the MPD on November 20, 2012 at 4:55 p.m. for the purpose of commencing an involuntary commitment proceeding against Mucha as punishment for initiating a duty disability application, and for the purpose of discrediting Mucha's duty disability application attempting to establish a reason to deny that application.

38. There was no "good faith" basis for the release of Dr. Feinsilver's report on November 20, 2012, as Feinsilver's evaluation of Mucha occurred 34 days earlier on October 17, 2012, and had Feinsilver believed Mucha was a danger to himself or any third party including

MPD command staff, Feinsilver would have been legally obligated to contact the appropriate law enforcement authorities to immediately initiate an involuntary commitment proceeding.

39. Feinsilver never made any effort to contact anyone to initiate involuntary commitment proceedings against Mucha, and Allen knew that.

40. There was no "good faith" basis for the ERS through Allen to release the Feinsilver report to MPD officials, nor for MPD officials to send its Tactical Enforcement Unit to Mucha's residence for the purpose of initiating an involuntary commitment proceeding under the pretense Feinsilver was concerned about Mucha being an immediate threat to himself or MPD officials.

41. The only reason for the ERS through Allen to have contacted the MPD to initiate the involuntary commitment proceeding against Mucha was for the purpose of punishing Mucha for initiating a duty disability application and to discredit Mucha's application so as to attempt to establish a reason to deny it.

42. As a direct and proximate cause of the defendants' actions to abuse the legal process by intentionally initiating involuntary commitment proceedings against Mucha as punishment for filing a duty disability application, Mucha has suffered emotional distress, mental anguish, loss of reputation, embarrassment, and humiliation.

43. Defendants by their deliberate actions have committed an intentional, willful and wanton action making punitive damages against each of them in their individual capacities necessary to stop this from reoccurring.

## FOURTH CAUSE OF ACTION
## VIOLATION OF § 51.30, WIS. STATS.

44. Reallege and incorporate herein by reference paragraphs 1 through 43 as if set forth at length herein.

45. Dr. Feinsilver's November 5, 2012 report was provided to the City of Milwaukee Employes' Retirement System (ERS) for the purpose of their evaluation of Mucha's duty disability claim that was pending with them.

46. The ERS completed its evaluation of Dr. Feinsilver's report without taking any action on November 12, 2012.

47. At no time did Mucha provide any authorization or approval to allow the ERS to provide Dr. Feinsilver's report to the MPD, but according to the Statement of Emergency Detention by Law Enforcement Officer completed by Jackson and collaborated by Gaglione on November 20, 2012, Dr. Feinsilver's report was provided to the MPD for action.

48. At no time did the ERS have a court order or other legal authorization allowing disclosure of Dr. Feinsilver's report to the MPD.

49. Pursuant to § 51.30, Wis. Stats., ERS' disclosure of Feinsilver's report to the MPD is in violation of Wisconsin Statutes entitling Mucha to $25,000 in damages.

### FIFTH CAUSE OF ACTION
### UNLAWFUL VIOLATION OF PROCEDURAL DUE PROCESS BY MALICIOUS ABUSE OF PROCESS IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS - UNDER COLOR OF STATE LAW

50. Reallege and incorporate herein by reference paragraphs 1 through 49 as if set forth at length herein.

51. On November 20, 2012, the ERS through Allen's knowledge and consent contacted the MPD for the direct purpose of influencing and/or causing the MPD to initiate an involuntary commitment of Mucha to punish Mucha for filing a duty disability application, to discredit Mucha and to establish a reason to deny his pending duty disability claim.

52. Prior to November 20, 2012, MPD officials had been in communication with the ERS and Allen to influence the dismissal of Mucha's duty disability application by attempting to indicate he was under investigation for conduct violations although having been cleared by the

District Attorney of such investigations by this time, and by alleging he could conduct limited duty positions among various other claims.

53. At Allen's direct knowledge and consent, Dr. Feinsilver's report was released to MPD officials on November 20, 2012 for the purpose of using statements made by Mucha to Dr. Feinsilver on October 17, 2012 and as reported by Dr. Feinsilver to the ERS under letter dated November 5, 2012 to provide the MPD a reason to initiate involuntary commitment proceedings against Mucha although knowing Dr. Feinsilver did not initiate such proceedings and would have had a duty to do so if he believed Mucha was a danger to himself or others.

54. There was no "good faith" basis for the ERS at Allen's direct knowledge and consent to provide MPD officials with Dr. Feinsilver's report except to influence and/or initiate an involuntary commitment proceeding against Mucha to discredit and to attempt to establish a reason to deny his duty disability application.

55. The actions of Allen, the ERS and City deprived Mucha of substantive and procedural due process guaranteed to him by the Fourth, Fifth and Fourteenth Amendments, as well as the laws of the State of Wisconsin so as to give rise to liability under 42 U.S.C. §1983.

56. As a direct and proximate result of the ERS and Allen's actions to have contacted the MPD by abusing the legal process by intentionally initiating and influencing an involuntary commitment proceeding against Mucha for the purpose of discrediting and/or attempting to establish a reason to deny Mucha's duty disability application, Mucha has suffered emotional distress, mental anguish, loss of reputation, embarrassment, and humiliation.

57. Defendant Allen by his deliberate actions, while acting under the color of law, has committed an intentional, willful and wanton action making punitive damages against him in his individual capacity necessary to stop this from recurring.

**WHEREFORE**, plaintiff demands relief and judgment as follows:

A. Assume jurisdiction over this case.

B. Declare defendants violated plaintiff's Fourth, Fifth and Fourteenth Amendment rights of due process in violation of 42 U.S.C. § 1983.

C. Compensatory damages against defendants jointly and severally for seizing and detaining plaintiff in violation of the plaintiff's due process and other civil rights, including but not limited to those guaranteed under the Constitution of the United States of America, and 42 U.S.C. § 1983, in the amount of $300,000 or such other amount to be determined by the trier of fact.

D. Punitive damages against Defendants Jackson, Gaglione and Allen jointly and severally for willfully and wantonly violating plaintiff's due process and other civil rights, including but not limited to those guaranteed under the Constitution of the United States of America, and 42 U.S.C. § 1983, in an amount to be determined by the trier of fact.

E. Compensatory together with punitive damages against Defendant City in the sum of Fifty Thousand Dollars ($50,000) for false imprisonment.

F. Twenty-Five Thousand Dollars ($25,000) in damages against the City of Milwaukee Employes' Retirement System for violating § 51.30, Wis. Stats., in providing Dr. Feinsilver's report to the MPD without prior authorization or legal justification.

G. Compensatory damages together with punitive damages against the City and the ERS in the sum of Fifty Thousand Dollars ($50,000) for abuse of the process.

H. Attorneys fees and costs as provided under 42 U.S.C. § 1988.

I. Any other relief the court deems just and necessary.

**A TRIAL BY JURY IS HEREBY DEMANDED.**

Dated this 20th day of March, 2014.

s/William R. Rettko
State Bar No. 1002608
Attorney for Plaintiff
Rettko Law Offices, S.C.
15460 W. Capitol Drive, Ste. 150
Brookfield, WI 53005-2621
(262) 783-7200   bill@rettkolaw.com